**Cheryl GROUT, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 66360.**

Supreme Court of Iowa.

June 16, 1982.

Ray Sullins and John P. Roehrick, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., Dan L. Johnston, Polk County Atty., and Kevin VanderSchel, Asst. Polk County Atty., for appellee.

ALLBEE, Justice.

Petitioner Cheryl Grout appeals from the postconviction court's denial of her application for postconviction relief, wherein she challenged the voluntariness of her guilty plea. In January 1979, Grout pleaded guilty to first degree robbery and was subsequently sentenced to a mandatory term of no more than 25 years. *See* §§ 711.1, .2, 902.3, .9(1), Supplement to the Code 1977. Because of a prior conviction for the forcible felony of second degree robbery, she is required to serve at least 12½ of those years without any possibility of parole. This requirement arises from section 906.5, Supplement to the Code 1977, which provides in pertinent part:

> If the person who is under consideration for parole is serving a sentence for conviction of a felony and has a criminal record of one or more prior convictions for a forcible felony or a crime of a similar gravity in this or any other state, parole shall be denied unless the defendant has served at least one-half of the maximum term of his or her sentence.

In this postconviction action, Grout asserts that she first learned of the section 906.5 limitation on April 30, 1979, almost three months after she was sentenced, and that therefore her guilty plea was involuntary because she did not fully understand its consequences. Grout further contends that in this case, relief should be granted in any event because the judge who accepted her plea and imposed sentence affirmatively misled her to believe she would be eligible for parole after five years.

■ I. *Iowa law.* Grout's contention that Iowa law requires defendants with prior forcible felony convictions to be informed of section 906.5 before they plead guilty is foreclosed by this court's recent decision in *Boge v. State*, 309 N.W.2d 428, 430–31 (Iowa 1981), which rejected precisely such an argument. *See also Fryer v. Scurr*, 309 N.W.2d 441 (Iowa 1981).

■ We are unable to pursue Grout's claim that she was affirmatively misled to believe she would be eligible for parole after five years, because she raises this issue for the first time on appeal. Issues not raised in the postconviction court cannot be considered on appeal.

■ II. *Federal constitutional law.* Grout's remaining argument is that, notwithstanding *Boge*, the due process clause of the federal constitution's fourteenth amendment requires that a defendant be informed of section 906.5, where applicable, during a guilty plea colloquy. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969) (guilty plea proceedings in state courts must comply with federal standards because waiver of federal constitutional rights is involved).

Six federal cases are cited by Grout in support of her position: *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973); *Moody v. United States*, 469 F.2d 705 (8th Cir. 1972); *United States v. Smith*, 440 F.2d 521 (7th Cir. 1971); *Bye v. United States*, 435 F.2d 177 (2d Cir. 1970); *Berry v. United States*, 412 F.2d 189 (3rd Cir. 1969); *Durant v. United States*, 410 F.2d 689 (1st Cir. 1969). With the exception of *Cuthrell*, which supports Grout's position only by way of dictum, each of these cases found there had been a violation of the federal rule of criminal procedure which governs guilty pleas; therefore, none of them reached the constitutional question. We further note that each of these cases was decided prior to 1975, when the federal rule governing acceptance of guilty pleas was amended and clarified. Recently, in *Hunter v. Fogg*, 616 F.2d 55 (2d Cir. 1980), which effectively overruled the *Bye* case relied upon by Grout, the change in the federal rule was explained as follows:

In 1975 Rule 11 of the Federal Rules of Criminal Procedure was amended to clarify the previous requirement that a federal defendant be advised of the "consequences" of a guilty plea. [Citations omitted.] As currently worded, Rule 11 provides that a defendant need be informed of only two sentencing consequences: "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." The meaning of these words is made abundantly clear in the Advisory Committee Note to Rule 11: "The objective is to insure that a defendant knows what minimum sentence the judge must impose and what maximum sentence the judge may impose.... Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty." Thus, for federal defendants, Rule 11's concern about sentencing minimums refers only to a statutory mandatory minimum, the lowest sentence the judge is permitted to impose. It is not concerned at all with statutory provisions affecting the date of earliest release from confinement, whether that date is specified by statute or by the sentencing judge pursuant to statutory authority. This is made clear by the Advisory Committee's explicit discussion of the possibility of parole ineligibility. The Committee's Note says, "It has been suggested that it is desirable to inform a

defendant of additional consequences which might follow from his plea of guilty." The Note then illustrates several consequences, including the possibility of ineligibility for parole. "Under the rule," the Note continues, "the judge is not required to inform a defendant about these matters, though a judge is free to do so . . . ."

*Hunter*, 616 F.2d at 60. Having determined that federal rule 11, as amended, does not require trial courts to inform defendants concerning ineligibility for parole, the *Hunter* court went further and concluded that there is no such requirement under the federal constitution. Such information as the existence of a minimum period of parole eligibility, the court said, "might usefully be told to a defendant but [is] not required to be told, either by Rule 11 or the Constitution." *Id.* at 61. *See also Armstrong v. Egeler*, 563 F.2d 796 (6th Cir. 1977).

Accordingly, we hold that the due process clause of the federal constitution does not require that a defendant with a prior forcible felony conviction be informed of the period of parole ineligibility prescribed by section 906.5 before his or her guilty plea may be accepted.

Having found no merit in either of the contentions on which the petitioner properly preserved error, we affirm the judgment of the postconviction court.

AFFIRMED.

LeGRAND, HARRIS and McGIVERIN, JJ., concur.

LARSON, J., concurs in the result.

McCORMICK, J., dissents.

REYNOLDSON, C.J., and UHLENHOPP and SCHULTZ, JJ., join the dissent.

McCORMICK, Justice (dissenting).

I am unable to agree that the question of the court's duty to inform Grout of the parole limitation in section 906.5 is controlled by *Boge v. State*, 309 N.W.2d 428 (Iowa 1981). Nor do I agree that Grout is foreclosed from challenging her conviction based on the plea-taking judge's erroneous advice concerning her eligibility for parole.

I. *The duty to advise.* The present case is easily distinguished from *Boge.* That case did not involve a statutory minimum mandatory sentence nor did it involve a constitutional issue. Insofar as relevant here, it involved only the issue of the court's duty under Iowa R.Crim.P. 8(2)(b) to advise a defendant in a plea proceeding of the effect of section 906.5 on the defendant's eligibility for parole from an indeterminate sentence. *See* 309 N.W.2d at 430–31. In this case, Grout was subject to both a mandatory minimum sentence and section 906.5. Under section 902.7 she was subject to a five-year mandatory minimum period of incarceration for use of a firearm in the offense. Under section 906.5 she was subject to a mandatory minimum period of incarceration of twelve and one-half years based on the prior conviction of a forcible felony. Thus the advice of a court limited to the applicability of section 902.7 would be incomplete and inherently misleading. This problem was neither involved nor addressed in *Boge.*

This court made it clear in *State v. Wilson*, 314 N.W.2d 408, 409 (Iowa 1982), that no meaningful distinction exists between the result under section 906.5 and the result under a minimum mandatory sentence provision like 902.7:

> In *Boge v. State*, 309 N.W.2d 428, 430–31, this court described the restriction in section 906.5 as a limitation on the power of the parole board to grant a parole rather than a minimum sentence. The effect, however, is the same. For example, the minimum five-year sentence under section 902.7 to which defendant was also subject because of his use of a firearm is also a limitation of the parole board's power. Certainly it would be difficult to point out any difference to the person who must serve the additional time.

Rule 8(2)(b)(2) requires the court to advise a defendant of the mandatory minimum period of incarceration under section 902.7. It is artificial and unrealistic to suggest that the defendant's understanding of

the minimum sentence can be established when only part of the truth is conveyed. Thus the constitutional mandate that the defendant have a full understanding of plea consequences pursuant to *Boykin v. Alabama*, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274, 279–80 (1969), cannot be satisfied in this situation by technical compliance with rule 8. None of the federal cases relied on by the court involved a similar problem.

I would hold that when a defendant is subject to more than one statutory provision establishing a mandatory minimum period of incarceration the court must advise the defendant of each as a matter of due process under the fourteenth amendment of the United States Constitution. Because the court did not fulfill that duty in the present case, I would reverse the postconviction court.

II. *The misleading advice.* I would also reverse because the plea-taking judge actually gave misleading advice. The judge told Grout she would be eligible for parole after serving five years of her sentence. The prosecutor and defense counsel agreed. As the postconviction court found, Grout did not learn until after expiration of the time for appeal that she would be ineligible for parole for twelve and one-half years instead of five years. This court holds, however, she is not entitled to relief from the misrepresentations in the original proceeding because of still another lawyer's mistake in the postconviction proceeding. This holding ignores our duty in exceptional cases like this one to forgive a failure to preserve error in the court below.

This duty arises when the mistake of counsel in failing to urge the contention at the trial level constitutes ineffective representation. *See State v. Schoelerman*, 315 N.W.2d 67 (Iowa 1982). It also arises under the judgment on the record statute, section 814.20, The Code, when the result is sufficiently egregious to be characterized as a miscarriage of justice. *See State v. Martin*, 243 Iowa 1323, 55 N.W.2d 258 (1952); *State v. Brainard*, 25 Iowa 572 (1868). The court's disposition of the present appeal is

an implicit invitation to a subsequent postconviction claim of ineffective postconviction trial counsel. We can avoid a gross injustice, substantial delay, duplicative proceedings and an unnecessary additional expenditure of public resources by performing our duty now under section 814.20.

The applicable principle was stated by the court in *Brainard*, 25 Iowa at 581:

It is made the duty of this court to decide criminal appeals according to the very justice of the case as shown by the record, without regard to technical errors. It does not harmonize with the humane spirit of the statute to lay down the iron rule that the defendant must inevitably and in all cases be visited with the consequences of the omissions or errors of counsel.

Although *Brainard* and *Martin* were decided under the predecessor of section 814.20, the present statute is a mere recodification of that statute and does not change the law. *See* 4 J. Yeager and R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 1328 at 322 (1979); *see also Emery v. Fenton*, 266 N.W.2d 6, 8 (Iowa 1978).

The present case does not involve an ordinary issue of admissibility of evidence or correctness of a jury instruction on a point of law. The judgment on the record statute is not intended to provide relief in that kind of situation. *State v. Smith*, 228 N.W.2d 111, 112 (Iowa 1975). Instead this case involves the integrity of the plea proceeding. If Grout was misled concerning the consequences of her guilty plea, as is indisputable under the record, then her plea cannot meet the constitutional standard of voluntariness which is essential to its validity. *State v. Boone*, 298 N.W.2d 335, 337–38 (Iowa 1980). This is a case that cries out for use of the exception to "the iron rule that the defendant must inevitably and in all cases be visited with the consequences of the omissions or errors of counsel."

No doubt exists under the present record that from the beginning of the plea proceeding through sentencing, the trial court, prosecutor and defense counsel all led Grout to believe she would be eligible for parole

after serving five years of her sentence. The court's colloquy during the guilty plea proceeding includes the following:

> THE COURT: Do you understand, Ms. Grout, that the maximum penalty for this can be twenty-five years and the minimum is five years. In other words, if you plead guilty to it and you're sentenced down to prison, that you have to be there five years before the parole board will even give you any consideration for probation; so you understand that? A. Yes, sir.

The colloquy during sentencing included the following:

> THE COURT: Now because of the fact, Ms. Grout, that you have been involved in so many difficulties after the first time the Court gave you probation, the Court's going to be compelled now to commit you to be imprisoned for a period not to exceed twenty-five years because you had a firearm in this robbery. And as I understand the law, you have to serve a minimum of five years, is that right, Mr. Smith?
>
> Mr. Smith (the prosecutor): That's correct, Your Honor.
>
> THE COURT: You can't get out; is that right, Mr. Arvidson?
>
> Mr. Arvidson (defense counsel): Yes, Your Honor.
>
> . . . .
>
> THE COURT: Ms. Grout, you know that even though you have done many, many things wrong, you know five years from now you will still be young. If you decide to make something out of yourself, even then you could do it. Do you understand that, Ms. Grout? A. Yes, sir.
>
> . . . .
>
> THE COURT: Because five years from now, you will still only be twenty-five years of age. You could marry the President of the United States, if you just would.

Even though only the colloquy during the plea proceeding could have affected the plea, the colloquy during sentencing confirms the misunderstanding of the court and attorneys concerning Grout's eligibility for parole. It also certainly confirms Grout's misunderstanding.

No issue is raised concerning Grout's failure to challenge her guilty plea by a motion in arrest of judgment under Iowa R.Crim.P. 23(3)(a). As the case has been presented, I believe her contentions are meritorious and she should be permitted to plead anew.

REYNOLDSON, C. J., and UHLEN-HOPP and SCHULTZ, JJ., join this dissent.